IN RE APPLICATION OF ACTON.

[Cite as *In re Application of Acton,* 121
Ohio St.3d 154, 2009-Ohio-499.]

(No. 2008–1681—Submitted November 19, 2008—Decided February 12, 2009.)

**Per Curiam.**

{¶ 1} Applicant, Lawrence Regis Acton of Cleveland, Ohio, has applied to register as a candidate for admission to the Ohio bar and to take the Ohio bar examination. The Board of Commissioners on Character and Fitness recommends that we disapprove, for now, his application to take the bar examination, citing his extensive record of traffic-related and other misdemeanor convictions and his failure to sufficiently disclose on the registration application a default judgment for credit card debt. We accept the board's recommendation to disapprove the pending application. The applicant may apply for the July 2010 bar exam, provided that he first submit to an assessment by the Ohio Lawyers Assistance Program and complete any recommended treatment program.

{¶ 2} The applicant entered Case Western Reserve University School of Law in August 2005 and filed his registration application in January 2007. In June 2007, the Joint Admissions Committee of the Cuyahoga County and Cleveland Metropolitan Bar Associations provisionally approved the applicant's character, fitness, and moral qualifications. The board advised the applicant in August 2007, however, that it had sua sponte invoked its investigatory authority under Gov.Bar R. I(10)(B)(2)(e) to inquire further into his lengthy traffic record and his history of other misdemeanor convictions.

{¶ 3} The applicant applied in early May 2008 to take the bar examination to be administered in July 2008. Later that May, a panel of the board conducted a hearing to examine the applicant's qualifications for bar admission. After making certain factual findings, the panel recommended disapproval but also recommended allowing the applicant to apply for the bar exam to be administered in July 2009. The board adopted the panel's findings and recommendation for disapproval, but further recommended that the applicant be denied the opportunity to take any exam before the July 2010 bar exam.

{¶ 4} The applicant has not objected to the board's report.

## The Applicant's Traffic-Related and Other Convictions

{¶ 5} The applicant's character questionnaire, filed in connection with his registration application, revealed a history of convictions from mid-June 1997 through November 2006. The applicant was found guilty eight times of speeding; on three other occasions he opted to waive a hearing and pay his speeding tickets; and in another case he was cited for speeding but was found guilty of a reduced charge. He was found guilty of misdemeanor assault on a felonious-assault charge and of disorderly conduct on a misdemeanor assault charge. Convictions of disorderly conduct also resulted from two charges of underage alcohol consumption, and a fourth conviction resulted from a charge of criminal damaging. He was convicted on a reduced charge after being cited for driving under a license suspension and was found guilty on charges of failure to yield, failure to obey traffic signals, and making an unlawful U-turn, among other traffic citations, including a seat-belt violation for which he forfeited bond. He was also found guilty two times of offenses related to disturbing the peace, and on four more occasions, he forfeited bond after being cited for such disturbances.

{¶ 6} From the supplemental character questionnaire filed in connection with his application to take the bar exam, the panel learned that the applicant had been convicted of speeding four more times since he filed his registration application. From the applicant's testimony, the panel learned that he had not disclosed a fifth speeding citation in response to this question on the supplemental questionnaire: "State whether, since registering as a candidate for admission to the practice of law, you * * * have been summoned for a violation of any statute, regulation, or ordinance." The applicant claimed that someone in the Office of Bar Admissions had told him that he did not need to disclose the citation. The panel and board disbelieved this explanation.

{¶ 7} The applicant expressed remorse during the hearing and readily acknowledged that his past behavior had demonstrated forgetfulness, irresponsibility, and immaturity. He promised to improve. Neither the panel nor the board, however, was convinced that the applicant could currently manage his behavior to comply with legal limits.

{¶ 8} The applicant attempted to explain why, after receiving notice of the board's investigation into his traffic and other misdemeanor record, he persisted in speeding and accumulated four more citations. As evidence of the applicant's indifference to traffic laws, the panel and board cited this colloquy:

{¶ 9} "Q. Can you give us any explanation as to why you continued to violate the traffic laws despite the fact that in August of 2007 you realized that you were being questioned on your history of driving problems? Can you give us an explanation why you keep speeding?

{¶ 10} "A. Yeah. I want to be careful with what I say because I don't want to make an excuse for anything. I violated the law and I understand that. That being said I am just forgetful. I have attention deficit disorder and I am forgetful and sometimes I forget to pay attention to the—to the speedometer or, you know, I just—I am not as diligent as I should be with focusing and paying attention to how fast I am going. None of this—none of the speeding violations were major, you know, 20 or 30 miles over. They were all 8 to 10 miles over, 12 miles. This is not an excuse. One mile over you broke the law. I am just saying I forgot sometimes to look at a speedometer or I—maybe I was—in certain circumstances had tried to do too many things in a day and was in a rushed manner and so at those times, you know, I was rushing around not thinking about how fast I was going but none of those excuse.

{¶ 11} " * * *

{¶ 12} "Q. Do you think this attention deficit disorder affects your ability to abide by the law?

{¶ 13} "A. No. The way it's worked for me in the past is I have been slow to learn my lessons. So I've made mistakes previously and not—not woken up to looking for and preventing myself from making—from doing those things in the future and what it takes to do those things."

{¶ 14} Because of his attention deficit disorder, the applicant received a disability accommodation from his law school, allowing him extra time in taking final exams. He has also asked for extra time in taking the bar exam, but has been granted only the opportunity to complete the test in a semiprivate room. Despite the applicant's need for accommodation throughout law school and in taking the bar, he answered "no" to this question on both his registration and bar exam applications: "Do you currently have any * * * condition or impairment * * * that in any way affects, or if left untreated might affect, your ability to practice law in a competent and professional manner?"

### The Applicant's Failure to Disclose a Default Judgment

{¶ 15} The applicant also acknowledged that he failed to fully disclose on his bar registration application the entry of a default judgment against him in 2001 for unpaid credit card debt. Although at one point in the application he cited the judgment, the applicant answered "no" to the following questions on that January 2007 application: (1) "Have you had any debts of $500 or more (including credit cards, charge accounts, and student loans) that have been more than 90 days past due within the past three years?" (2) "Have you ever had a credit card or charge account revoked?" and (3) "Have you ever defaulted on any other debt?"

{¶ 16} Upon further inquiry, the applicant claimed that he must have misread the question. The panel and board, however, detected the applicant's indifference toward financial responsibility from this colloquy:

{¶ 17} "Q. Okay, in 2001, you got a default judgment against you for money owed on a credit card?

{¶ 18} "A. Right.

{¶ 19} "Q. You didn't fill in the answer to the question * * * has the judgment been satisfied. If not, how much is still owing?

{¶ 20} "A. As far as I know, I don't think it's ever been satisfied or if it has, it's possible that my dad paid it. My dad told me, you know, he would—he told me that—just not to pay it because the majority of it was interest or something. But, no, I have never—I never satisfied it.

{¶ 21} "Q. Okay. That's been six, seven years ago. Do you intend to satisfy it?

{¶ 22} "A. I don't—honestly I don't—I had completely not thought about it. I believe it's with Discover Card. I don't know—to be honest with you my dad used to help me out with my finances when I was young. So if he's made a payment on it, it's possible.

{¶ 23} "Q. Do you think you ought to check?

{¶ 24} "A. Yeah, obviously."

### Disapproval of the Applicant's Character and Fitness Is Warranted

{¶ 25} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Necessarily, "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id.

{¶ 26} As the panel and board found, this applicant has failed to satisfy his burden of proof. "[A] pattern of disregard of the laws of this state" is a factor that weighs against allowing admission to the practice of law in Ohio. Gov.Bar R. I(11)(D)(3)(f). Likewise, "[f]ailure to provide complete and accurate information concerning the applicant's past" may constitute a basis for disapproval. Gov.Bar R. I(11)(D)(3)(g). An applicant's "[n]eglect of financial responsibilities" bodes ill for his or her ability to oversee the financial and other interests of clients with the diligence and integrity this profession requires. See Gov.Bar R. I(11)(D)(3)(k). Moreover, the possibility that a mental disorder may impede an

applicant's ability to practice law in a competent and professional manner must also be factored into our decision. See Gov.Bar R. I(11)(D)(3)(e).

{¶ 27} All of these points weigh in favor of disapproval of this applicant. As the panel and board aptly observed:

{¶ 28} "[T]aking into consideration * * * the Applicant's continued pattern of disregard of the traffic laws of the State of Ohio; failure to provide complete and accurate information concerning the Applicant's past; the Applicant's nondisclosure of pertinent information; the Applicant's apathy or inability to appreciate and/or neglect of his financial responsibilities; and evidence of mental disorder, which untreated could affect the Applicant's ability to practice law, * * * [we find] that the Applicant has not met his burden by clear and convincing evidence that he currently possesses the requisite character and fitness to sit for the Ohio Bar."

{¶ 29} Accepting the board's report, we disapprove this applicant's pending application for admission to the Ohio bar and deny him permission to take the Ohio bar examination. The applicant may reapply, in accordance with Gov.Bar R. I(3), to take the bar examination to be administered in July 2010. In reapplying, the applicant must first submit to an assessment by the Ohio Lawyers Assistance Program and complete any recommended treatment program.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Lawrence Regis Acton, pro se.

Nalan, Romaine & Schneiberg and Michael M. Courtney, for the Cleveland Metropolitan Bar Association.